**No. 50744.**—Protests 99528–K, etc., of Geo. D. Emery Co. (San Francisco).

KEEFE, Judge: These cases involve the proper quantity upon which a duty or tax should have been assessed upon certain balsa wood imported from Ecuador. The plaintiff claims that the collector used an excessive number of board feet as a basis for his assessment of duty or tax and that assessment should have been made upon the actual quantity imported. The wood in question was accorded free entry under the provisions of paragraph 1803, Tariff Act of 1930, but an assessment of a tax or duty at the rate of $1.50 per thousand feet, board measure, was made under the provisions of section 3424, Internal Revenue Code (Title 26, U. S. C.), apparently as modified by the provisions of the trade agreement with the Republic of Ecuador (T. D. 49710), or the trade agreement with the Republic of Peru (T. D. 50670).

Under the internal revenue law a tax or duty at the rate of $3 per thousand feet, board measure, was imposed upon the importation of —

Lumber, rough, or planed or dressed on one or more sides—

with certain exceptions, not material here. By the provisions of the trade agreements referred to, the said tax or duty was reduced to $1.50 per thousand feet, board measure, on—

Balsa lumber, rough, or planed or dressed on one or more sides.

According to the record, all of the balsa wood in question in its imported condition was in the rough, that is to say, it had been sawn only. The controversy here before us arose out of the method adopted by the customs officers in determining the number of feet, board measure, contained in the two shipments, and there is no dispute that a board foot is the content represented by a board 1 foot square and 1 inch thick.

The merchandise was imported in bundles held together by wooden cleats and wire or metal straps. As to the thickness of the pieces contained, each bundle appears to have been fairly uniform, so that pieces 2 inches in thickness were contained in one bundle, pieces 3 inches in thickness in another, and so on, although there were some mixed bundles. The length of the pieces in each bundle varied by fractions of an odd or even foot, so that in a bundle approximately 12 feet long there might be pieces over that length but, so far as the record shows, none as long as 13 feet. Apparently, there was no uniformity as to width.

The lumber was measured while in customs custody by one Wilbert Beaman, a deputy inspector for the National Hardwood Lumber Association, acting on instructions "to take the cubic measure over-all for freight revenue purposes only" and, in addition, to select a portion of the shipments which would meet dimensions required by a contract had by the importer with the Navy, and to take the board measurement of the selected portion. He was, therefore, to apply two methods of measuring the lumber in question, one, over-all cubing on all the lumber, and the other, commercial board measurement of a selected portion.

The former method was for the purpose of determining the freight to be paid on the shipments, it being manifest that the interest of both the carrier and the consignee would be to determine how much space was occupied by the lumber in the holds of the ships. The latter method obviously was to determine how much would be paid for the lumber on a board-foot basis.

In cubing the lumber, Mr. Beaman took the measurement over all, the depth, width, and length of each bundle, and in so doing he took the measurements of depth and width on the outside of the cleats and took the longest piece in each bundle as representing the length of the bundle. Multiplying out such figures would, of course, give the cubic *space* which each bundle occupied, but it would not, because of the spaces between the pieces of lumber as bundled, and because of taking the depth and width measurements on the outside of the cleats and the longest piece as representing the length, give the cubic *content* of wood contained in each bundle.

It is clear from the record, including the official papers, however, that the information contained on Mr. Beaman's tally sheets (or on similar sheets made by a representative of the carrier who also measured the lumber in like manner), with respect to the over-all cubic measurements, was taken by the customs officers, and upon being multiplied by 12, the total was used as the board-foot measurement upon which duty was assessed.

The inaccuracy of such a method is obvious, whereby a considerable amount of space was measured as wood. The testimony of men of long experience in the mensuration of wood, offered by the plaintiff and not controverted by the defendant, is that it is impossible to determine the board measurement of lumber in the

condition of that at bar by such method, and it is manifest that the over-all cubic measurements compiled by Mr. Beaman were not taken with the view of determining the board measurement therefrom, and it does not appear to be the common or commercial practice to use them for such purpose.

We have no hesitancy, therefore, in finding and holding that the board measurement used by the collector in assessing duty on the lumber herein was incorrect. Our next inquiry is to determine if there is evidence before us upon which the correct board measurement may be found.

Counsel for the plaintiff contends that measurement according to the National Hardwood Lumber Association rules, as outlined in the testimony of its witnesses, results in the actual number of board feet of lumber imported, citing the fact, as shown by the record, that it is upon such method of measurement that the wood is sold by the importer.

Counsel for the Government, however, takes the position that duty must be assessed upon the number of physical board feet of lumber imported, and while seemingly tacitly admitting the inaccuracy of the method followed by the collector, contends that the method urged by the plaintiff is less accurate and violates subsection (b) of section 3424, *supra*, in that on some of the lumber measured by one of plaintiff's witnesses deduction was allowed for planing.

Board measurement of lumber has been the subject of numerous rulings of the Treasury Department and of decisions by this and our appellate court as far back as such rulings and decisions have been recorded. Unfortunately, none of such rulings or decisions seems to be specifically applicable to the situation in the case at bar. It may be said, however, to be well established that in the absence of expressed contrary statutory intent, board measurement for tariff purposes is to be determined according to the general trade practice. *F. W. Myers & Co.* v. *United States*, T. D. 27444, G. A. 6389, 11 Treas. Dec. 862, and *United States* v. *Thomson*, 2 Ct. Cust. Appls. 76, T. D. 31630.

As has been said, plaintiff relies upon measurements claimed to have been made in accordance with what is alleged to have been the trade practice, viz, the rules of measurement of the National Hardwood Lumber Association. The rules themselves are not before us, and a careful scrutiny of the testimony of the witnesses and the supporting evidence as to the measurement of the lumber in question reveals what appears to us to be material variations in the methods followed by the witnesses.

Witness Beaman testified that he took the board measurement of two carloads of the lumber in question prior to their being dispatched after importation. Anthony Kulier, shown to have had long experience in the measurement of lumber, testified that he supervised the taking of board measurement of the contents of four cars after their arrival at Carteret, N. J., and Adam Ginda, likewise shown to have been experienced in the measurement of lumber, testified that he measured the contents of three cars upon their arrival at West Trenton, N. J.

Beaman said that the rules he applied were the "Central American Mahogany rules of measurement of the National Hardwood Lumber Association." Under them, he said, he caused the bundles to be broken open and measured each stick as follows:

As to length, measurement was made by a measuring pole on the even and odd foot, that is to say, all pieces over any whole number of feet, but less than 6 inches over, were measured as the whole number of feet. For example, a piece 12 feet, 4 inches, would be measured as 12 feet. All pieces more than 6 inches over the whole number of feet were measured as the next higher foot. For example, a piece 12 feet, 8 inches long, would be measured as 13 feet. Pieces measuring exactly on the half foot were tallied alternately up and down. For example, the first piece exactly 12 feet, 6 inches long, would be tallied as 12 feet, while the second piece exactly that size would be tallied as 13 feet.

The width was not found as a separate measurement but was taken by the use of a board-foot rule, one of which is in evidence as exhibit 7, which is put across the width of the piece and is so made that at the point where the width would ordinarily be taken the surface measurement (width times length) for various given lengths is indicated.

It would appear from Beaman's testimony (R. p. 42) that the thickness was taken on the lumber measured by him on the half inch, that is to say, whenever the fraction of an inch in thickness of a piece was less than one-half, it was tallied as the next lower size on a half-inch scale. We note on collective exhibit 4, the tally sheets that he made on the two carloads on which he took board measurement, that only 2-, 3-, and 4-inch thicknesses are shown, but it may well have been that only those sizes appeared in the bundles he measured.

Kulier's testimony as to the lumber measured under his supervision is similar to Beaman's as to the method of determining length and the use of the board rule in finding surface area. However, as to thickness, it would appear that his measurements were taken on the inch, that is to say, whenever the thickness·of a piece was less than a full inch it was tallied as the next lower size on a one-inch scale. On page 113 of the record he said that the half inch was rarely used in balsa wood, and in measuring illustrative exhibit 1, a piece of balsa wood, which is slightly over 2½ inches thick when measured by an office rule, he called the thickness as 2 inches.

Ginda testified that the method he used was the same as that used by Kulier. Yet, examination of his tally-sheets, collective exhibits 8 and 9, show thicknesses measured by him of 1, 1¼, 1½, 2, 2½, 3, 3½, and 4 inches.

From the foregoing, we think it is apparent that the record shows that the methods used by the three witnesses lacked uniformity to the extent that no one of them may be said with certainty to represent the trade practice. Under such circumstances, we are of the opinion that the plaintiff has failed to make out a 'prima facie case establishing the correct board measurement of any portion of the lumber in the entries before us.

Judgment will therefore be entered in favor of the defendant.·